IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NATHANIEL JOHNSON, (TDCJ-CID #691705)  §§§§§ Petitioner, | |
| VS.  §  | CIVIL ACTION NO. H-11-1367 |
| RICK THALER, §§§§ Respondent. | |

## MEMORANDUM AND OPINION

The petitioner, Nathaniel Johnson, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging a disciplinary conviction at the Ellis Unit of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID"). He is currently serving a sentence for a 1994 conviction imposed by a state court in Dallas County, Texas. The respondent filed a motion for summary judgment, (Docket Entry No. 10), along with prison disciplinary and grievance records. (Docket Entry No. 11).[1] Johnson has filed a response. (Docket Entry No. 12). Based on careful consideration of the pleadings, the motion and response, the record, and the applicable law, this court grants the respondent's motion and, by separate order, enters final judgment. The reasons are explained below.

---

[1] In support of his motion for summary judgment, the respondent filed the following documents: (A) TDCJ-CID computer records concerning Johnson's conviction; (B) an affidavit of Dorothy Whitehead with prison disciplinary records for case number 20100373194; (C) an affidavit of Sandra K. Murphy with Johnson's grievance records on the disciplinary hearing; and (D) an audio recording of the hearing for the disciplinary case.

I.  **Background**

On September 8, 2010, prison officials at the Ellis Unit conducted a hearing in disciplinary case number 20100373194. The hearing officer found Johnson guilty of participating in an unauthorized commodity exchange. (Docket Entry No. 11, Disciplinary Hearing Record, p. 1). Johnson's punishment consisted of a reduction in good-time earning class status from state approved trusty ("SAT") 3 to SAT 4; cell restriction for thirty days; a loss of commissary privileges for 30 days; and suspension of his visitation privileges until October 8, 2010. (Docket Entry No. 11, Disciplinary Hearing Record, p. 1). Johnson filed a Step One Grievance on September 20, 2010, which was denied on October 9, 2010. (Docket Entry No. 11, Disciplinary Grievance Record, pp. 1-2). Johnson filed a Step Two Grievance on October 18, 2010, which was denied on November 8, 2010. (*Id.* at 3-4).

On April 7, 2011, this court received Johnson's federal petition. Johnson contends that his conviction is void for the following reasons:

(1) the evidence was insufficient to support the finding of guilt because Johnson never told inmate Rodrick Rhodes to deposit $50 into Johnson's inmate account;

(2) counsel-substitute rendered ineffective assistance by failing to introduce an exculpatory written statement from inmate Rodrick Rhodes;

(3) counsel-substitute failed to call inmate Rodrick Rhodes as a witness at the disciplinary hearing;

(4) prison officials caused Johnson to forfeit seventeen years of good-time credit on revocation of his mandatory supervision; and

    (5)  prison officials confiscated $3.06 from his inmate account.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 7-8).

  The threshold issue is whether Johnson has stated meritorious grounds for federal habeas relief.

**II. Analysis**

  To show a violation of the Due Process Clause in connection with a disciplinary hearing, a prisoner must establish that he has been denied a "'liberty interest' that the prison action implicated or infringed." *Richardson v. Joslin,* 501 F.3d 415, 418 (5th Cir. 2007).

  In *Wolff v. McDonnell,* 418 U.S. 539, 557 (1974), the Supreme Court held that the due process standards governing disciplinary proceedings depended on the sanction imposed and the consequences. *Walker v. Navarro Cnty. Jail,* 4 F.3d 410, 412 (5th Cir. 1993). A prisoner punished by solitary confinement and loss of good-time credits is entitled to: (1) written notice of the charges against him at least twenty-four hours before the hearing; (2) a written statement of the fact finders as to the evidence relied on and the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present documentary evidence in his defense, unless these procedures would create a security risk in the particular case. When the punishment has no effect on the length of the sentence, an inmate is entitled to some notice, an opportunity to present his view either in person or by written statement, and an informal nonadversarial review. *Hewitt v. Helms,* 459 U.S. 460 (1983).

  In *Sandin v. Conner,* 515 U.S. 472 (1995), the Supreme Court held that while a state may, under certain circumstances, create liberty interests applicable to prisoners protected by the Due Process Clause, such interests are generally limited to state-created regulations or statutes that affect the quantity,rather than the quality, of time served by a prisoner. The Due Process Clause does not

protect every change in the conditions of confinement that has a substantial adverse effect on a prisoner. *Id.* at 478. A prisoner's loss of good-time credits as a result of punishment for a disciplinary conviction, increasing the sentence beyond the time that would otherwise have resulted from state laws providing mandatory sentence reductions for good behavior, must be accompanied by certain procedural safeguards to satisfy due process. *Madison v. Parker,* 104 F.3d 765, 768 (5th Cir. 1997).

The Fifth Circuit has applied *Sandin* to a number of situations. Punishment consisting of placement in administrative segregation is not enough to trigger the process rights. *Luken v. Scott,* 71 F.3d 192 (5th Cir. 1995). The loss of the opportunity to earn good-time will not trigger constitutional protections even when an inmate is eligible for mandatory supervision. *Malchi v. Thaler,* 211 F.3d 953 (5th Cir. 2000). The imposition of commissary and cell restrictions will not trigger the protection of the Constitution. *Madison v. Parker,* 104 F.3d 765, 768 (5th Cir. 1997). The loss of good time will not support relief to the extent that it adversely affects parole eligibility. *Sandin,* 515 U.S. at 487. However, the loss of good time will trigger the protection of the Constitution if a prisoner is eligible for release on mandatory supervision. *Madison v. Parker,* 104 F.3d at 769.

To the extent that Johnson attempts to assert a claim of a denial of due process based on the loss of privileges, his claims are barred by *Sandin.* These punishments are not the types of "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 486 n.9. The punishment changed the conditions of Johnson's confinement, but did not give rise to a due process claim. *Madison,* 104 F.3d at 767-68.

Johnson may argue that as a result of the guilty finding in the disciplinary case, the Texas Board of Pardons and Paroles ("Board") will delay considering his eligibility for release on parole. Prisoners may become eligible for release under Texas law on parole or under a mandatory supervised release program. *See Madison,* 104 F.3d at 768. "Parole" is the "discretionary and conditional release of an eligible prisoner . . . [who] may serve the remainder of his sentence under the supervision and control of the pardons and paroles division." *Id.* "Mandatory supervision" is the "release of an eligible prisoner . . . so that the prisoner may serve the remainder of his sentence not on parole, but under the supervision and control of the pardons and paroles division." *Id.*

The law is clear that Johnson has no constitutional right to parole. *Orellana v. Kyle,* 65 F.3d 29, 32 (5th Cir. 1995); *Creel v. Keene,* 928 F.2d 707 (5th Cir. 1991); *Madison,* 104 F.3d at 768 (citing TEX. CODE CRIM. P. ANN. art. 42.18, § 8(a)). Because a prisoner has "no liberty interest in obtaining parole in Texas, he cannot complain of the constitutionality of procedural devices attendant to parole decisions." *Allison v. Kyle,* 66 F.3d 71, 73-74 (5th Cir. 1995)(citing *Orellana,* 65 F.3d at 32). Any argument by Johnson that he is entitled to be considered for release on parole at a particular time lacks merit.

Johnson argues that if he had remained at the good-time earning status of SAT 3 rather than SAT 4, he would have had an opportunity to earn good-time credits that might have led to an earlier release on mandatory supervision. Johnson claims that the change in his good-time earning status means that he has lost good-time credits. (Docket Entry No. 12, Petitioner's Response, pp. 3-4). Johnson mistakenly equates the ability to earn good-time credits with the actual loss of such credits. Johnson did not lose accrued or earned good-conduct time. Rather, his ability to earn good-time credits was curtailed. Johnson's diminished ability to earn good-time credits, without more, does

not rise to a deprivation of due process. *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995), *cert. denied*, 517 U.S. 1196 (1996) ("the mere opportunity to earn good-time credits" does not rise to a "constitutionally cognizable liberty interest sufficient to trigger the protection of the due process clause"). The possibility that an inmate's good-time earning status will affect the timing of his release is considered a speculative, collateral consequence of the prison disciplinary decision that does not create a constitutionally protected liberty interest. *Id.*

Johnson also complains of the delay in his release to mandatory supervision. Johnson is eligible for release to mandatory supervision for his sentence for burglary of a building. (Docket Entry No. 10, Respondent's Motion for Summary Judgment, Ex. A, p. 2). Though Johnson has a constitutional expectancy of early release under the Texas revised mandatory supervision statute, this court need not consider whether Johnson received the due process required by *Wolff* because he did not lose any good-time credits. Johnson's first three grounds for habeas relief relating to the denial of due process at his disciplinary hearing lack merit. He is not entitled to habeas relief on these claims.

### III. The Claim Based on the Forfeiture of Previously Earned Good-Time Credits

In his fourth ground for habeas relief, Johnson claims that the TDCJ-CID illegally extended his sentence by refusing to restore previously earned good-time credits. To the extent that Johnson's claims are based on state-law violations, they are not a proper basis for federal habeas relief. A state prisoner seeking federal court review of his conviction or sentence under 28 U.S.C. § 2254 must assert a violation of a federal constitutional right. *Fierro v. Johnson,* 197 F.3d 147, 156 (5th Cir. 1999). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. *Estelle v. McGuire,* 502 U.S. 62, 67-68

(1991). The question before a federal habeas corpus court is not whether the state court correctly applied its own interpretation of state law; rather, the question is whether the petitioner's federal constitutional rights were violated. *Neyland v. Blackburn,* 785 F.2d 1283, 1293 (5th Cir.), *cert. denied,* 479 U.S. 930 (1986); *Coleman v. Thompson,* 501 U.S. 722, 730 (1991).

Johnson complains that the TDCJ-CID improperly refused to restore good-time credits he had earned while incarcerated, before his release to mandatory supervision and its revocation. The TDCJ-CID grants good-conduct time to an inmate only if the department finds that the inmate is actively engaged in an agricultural, vocational, or educational endeavor, in an industrial program or other work program, or in a treatment program. TEX. GOV'T CODE ANN. § 498.003(a) (Vernon 2000). An inmate may accrue good-conduct time, in an amount determined by the department that does not exceed 15 days for each 30 days actually served, for diligent participation in an industrial program or other work program or for participation in an agricultural, educational, or vocational program provided to inmates by the department. TEX. GOV'T CODE ANN. § 498.003(d).

The Constitution does not guarantee an inmate good-time credit for satisfactory behavior while in prison. *Madison v. Parker,* 104 F.3d 765, 768 (5th Cir. 1997) (citing *Wolff v. McDonnell,* 418 U.S. 539, 557 (1974)). The award of good-conduct time is a matter of state law, not a federal constitutional right. *See Holtzinger v. Estelle,* 488 F.2d 517, 518 (5th Cir. 1974). If a state creates a right to good-time credit that gives rise to a liberty interest, then a prisoner is entitled to Fourteenth Amendment procedural due process in relation to the loss of such credit. *See Madison,* 104 F.3d at 768 (citing *Wolff,* 418 U.S. at 557). Under Texas law, however, "good-time credit is not a vested right, but rather is a privilege which may be forfeited, either by violating the TDCJ's rules while in

its custody, or by violating the guidelines of a conditional release program." *Ex parte Henderson,* 645 S.W.2d 469, 472 (Tex. Crim. App. 1983).

When Johnson committed the underlying offense, Texas law provided, as it does today, that good-conduct time credit applies only to eligibility for parole or mandatory supervision and does not otherwise affect an inmate's term. TEX. REV. CIV. STAT. ANN. art. 6181-1, § 4 (West 1977); *see* TEX. GOV'T CODE ANN. § 498.003(a) (Vernon Supp. 1994). Texas law provided, as it does today, that "good conduct time is a privilege and not a right." TEX. REV. CIV. STAT. ANN. art. 6181-1, § 4 (West 1985); *see* TEX. GOV'T CODE ANN. § 498.003(a) (Vernon Supp. 1994). The statute stated:

> Upon revocation of parole or mandatory supervision of an inmate, the inmate loses all good conduct time previously accrued, but upon return to the department the inmate may accrue new good conduct time for subsequent time served in the department. The director may, however, restore good conduct time forfeited upon revocations not involving new criminal convictions after an inmate has served a reasonable period of good behavior in the department, to be no less than three months, subject to rules adopted by the department.

TEX. REV. CIV. STAT. ANN. art. 6181-1, § 4 (West 1985).

In 1987, the Texas legislature added a provision that allowed the Texas Board of Criminal Justice to adjust its policy on restoration of good-time credits in relation to prison overcrowding. If the Board of Criminal Justice determined that overcrowding had decreased and it was not necessary to restore good-conduct time or award additional good-conduct time, it could direct the department to discontinue those practices. TEX. REV. CIV. STAT. ANN. art. 6181-1, § 4 (West 1988); *see Hallmark v. Johnson,* 118 F.3d 1073, 1075 (5th Cir.), *cert. denied,* 522 U.S. 1003 (1997).

In 1995, the Texas legislature amended the statute on the reinstatement of previously earned good-time credits. On a return to incarceration, an inmate could accrue new good-conduct time, but

the TDCJ could no longer restore previously earned good-conduct time forfeited on a revocation. *See* TEX. GOV'T CODE ANN. § 498.004(b) (Vernon 1999). Since as early as 1985, Texas law provided the Board of Criminal Justice discretion to forfeit previously earned good-time credits for parole violations. The Board has also had the discretion to restore previously forfeited good-conduct time credits. In *Hallmark*, the Fifth Circuit observed that because the Texas statutes have, since at least 1977, given the state correctional authorities discretion to restore forfeited good-time credits, there is no protected liberty interest in the restoration of good-time credits. *Hallmark*, 118 F.3d at 1079-80 (citing *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11 (1979)). The failure to restore Johnson's previously forfeited good-time credits violates neither Texas law nor the Due Process Clause of the United States Constitution.

## IV.     The Property Deprivation Claim

In addition to complaining of the denial of due process during his disciplinary hearing, Johnson complains of the loss of property. A writ of habeas corpus is the appropriate federal remedy for a state prisoner challenging the fact or duration of his confinement. *See Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973); *Spina v. Aaron*, 821 F.2d 1126, 1127-28 (5th Cir. 1987). Suits brought under 42 U.S.C. § 1983 are the proper vehicle to attack conditions of confinement and prison procedures. *See Carson*, 112 F.3d at 820; *Cook v. Tex. Dept. of Criminal Justice Transitional Planning Dept.*, 37 F.3d 166, 168 (5th Cir. 1994). If a petition combines habeas claims with section 1983 claims, and the claims can be separately treated, federal courts should do so. *Serio v. Members of La. State Bd. of Pardons*, 821 F.2d 1112, 1119 (5th Cir. 1987).

Johnson complains that prison officials confiscated $3.06 from his inmate account for indigent supplies. An inmate's allegation that his property was lost by a prison official does not state

a claim under 42 U.S.C. § 1983, even when the prison official acted intentionally. *Hudson v. Palmer*, 468 U.S. 517 (1984). In Texas, when an inmate's property is taken without compensation, he has a remedy in state court, not a federal court claim under 42 U.S.C. § 1983, unless there is no postdeprivation remedy or the remedy is inadequate. *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984). Johnson has made neither of the required showings. This claim based on a deprivation of property lacks an arguable basis in law.

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Christopher Village, L.P. v. Retsinas,* 190 F.3d 310, 314 (5th Cir. 1999). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The pleadings and prison records show that Johnson's federal petition fails to state a ground for habeas relief.

## V.  Conclusion

The respondent's motion for summary judgment, (Docket Entry No. 10), is granted. Johnson's petition for a writ of habeas corpus is denied. This case is dismissed. Johnson's motion for the suspension of rules concerning the number of copies, (Docket Entry No. 13), is granted. Any remaining pending motions are denied as moot.

The Supreme Court has stated that the showing necessary for a certificate of appealability is a substantial showing of the denial of a constitutional right. *Hernandez v. Johnson,* 213 F.3d 243, 248 (5th Cir. 2000) (citing *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000)). Under that standard, an applicant makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or

that the issues are suitable enough to deserve encouragement to proceed further. *See Clark v. Johnson,* 202 F.3d 760, 763 (5th Cir. 2000). When a district court has rejected a prisoner's constitutional claims on the merits, the applicant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack,* 529 U.S. 484. This court denies Johnson's petition after considering the merits of his constitutional claims. This court denies a certificate of appealability because Johnson has not made the necessary showing for issuance.

SIGNED on November 23, 2011, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge